2025 IL App (1st) 230518-U

No. 1-23-0518

Order filed November 18, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 10 CR 16711 |
| JAUAN O'NEAL, | ) ) | Honorable Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirmed. Circuit court did not err in denying defendant's motion for ballistic testing, as defendant did not present *prima facie* case.

¶ 2    Defendant Jauan O'Neal appeals from the circuit court's order denying his motion for

ballistic testing of a fired bullet jacket under section 116-3 of the Code of Criminal Procedure

(Code) (725 ILCS 5/116-3 (West 2020)), claiming he established the statutory requirements. We

disagree and affirm.

¶ 3    Following a 2013 jury trial, defendant was found guilty of felony murder, second-degree murder based on unreasonable self-defense, and aggravated discharge of a firearm. On direct appeal, we reversed defendant's felony murder conviction, as the use of aggravated discharge of a firearm as a predicate was improper, and remanded for resentencing on the remaining charges. *People v. O'Neal*, 2016 IL App (1st) 132284, ¶ 63. As we addressed the trial evidence fully in our order on direct appeal, we recite those facts here and supplement from the record to the extent relevant to the instant appeal.

¶ 4     On May 29, 2010, a group of people, including defendant, were drinking and smoking marijuana near the intersection of 51st Street and South Laflin Street in Chicago. Defendant's friend Darius Murphy was sitting in the front passenger seat of a parked Pontiac vehicle on the opposite side of the street. Many of the people at the party, including defendant, were members of the Black P. Stone gang, which was involved in a conflict with the neighboring La Raza gang.

¶ 5    Defendant was acting as "security" for the party that night and was carrying a 9-millimeter Smith and Wesson handgun. Murphy's brother Deandre and his cousin Nikevis testified that they understood defendant's responsibility as the "security" was to protect the people at the party from rival gangs. None of the witnesses at trial testified that they saw other partygoers carrying firearms.

¶ 6    During the party, a van with tinted windows approached, traveling the wrong way down Laflin Street. People at the party yelled, "on that van" or "on that car," and defendant fired his gun at the van. After defendant fired, the van drove away. People then realized that Murphy had been shot in the head.

¶ 7     The amount of shots defendant fired was unclear. Deandre testified that he heard 6 or 7 shots, Nikevis heard 4 or 5, and Derreon, Murphy's other brother, estimated 8 or 10. Police found five cartridge cases on the ground, one copper bullet jacket on the front passenger-side floorboard of the Pontiac, and a bullet core in Murphy's head. An investigator testified that it is not unusual for a bullet jacket to peel off a bullet core as it travels through a window.

¶ 8     Testing revealed that all five cartridge cases were fired from the same firearm, a Smith and Wesson 9-millimeter semiautomatic pistol that was later recovered. The bullet jacket found in the Pontiac was a "9 mm/38 class caliber bullet jacket" and "suitable for further microscopic comparison if the suspect firearm was submitted," but no comparison testing was performed. The bullet core removed from Murphy's head was not suitable for comparison testing.

¶ 9     There was also conflicting evidence regarding who was in the van and whether any of its occupants were armed. Deandre and Nikevis both testified that there was only one 40-year-old Hispanic man driving the van. They did not see anyone in the van with a weapon. Samuel Walton, a defense witness, testified that there were four Hispanic men inside the van, including a passenger who was holding a gun out the window. Andre Lacour, another defense witness, also saw multiple people inside the van, but he could not say how many. Andre testified that he saw the people in the van "arguing or fumbling with something." Terry McCauley, the final defense witness, testified that there was one passenger in the van in the front seat who raised something that Terry thought may have been a gun. Terry said that he could not be certain because it was dark and the van's windows were tinted.

¶ 10     After his arrest, defendant was interrogated by Detective Scott Reiff, who testified that defendant admitted firing at the van. The first time Reiff questioned defendant, he said that there

were three Hispanic men in the van, one of whom was holding a gun out the front passenger window and flashing gang signs. The second time Reiff questioned defendant, he said that there was only one passenger in the van and that he did not see a gun, only a flash.

¶ 11　The jury found defendant guilty of felony murder, second-degree murder based on unreasonable self-defense, and aggravated discharge of a firearm. On direct appeal, we reversed defendant's felony murder conviction and remanded for resentencing on the remaining charges of second degree murder and aggravated discharge of a firearm. *O'Neal*, 2016 IL App (1st) 132284. ¶ 73.

¶ 12　We subsequently remanded a second time for resentencing after the circuit court considered a void conviction in aggravation and improperly imposed consecutive, rather than concurrent, sentences. *People v. O'Neal*, 2021 IL App (1st) 172569-U. On defendant's third appeal, we affirmed the circuit court's imposition of 20 years in prison for second-degree murder and 15 years for aggravated discharge of a firearm, to run concurrently. *People v. O'Neal*, 2024 IL App (1st) 220326-U, ¶ 31.

¶ 13　While his previous motion was on appeal, defendant filed a *pro se* motion for Integrated Ballistic Identification System testing under section 116-3 of the Code. He requested testing of the bullet jacket found on the floorboard of the Pontiac, arguing that "[a] finding that the 9-millimeter/.38 caliber fired bullet jacket was in fact a .38 caliber would mean that there was more than one shooter, the petitioner and the passenger of the van, and that the passenger of the van is responsible for the death of Darius Murphy not Mr. O'Neal." (Emphasis added.) At the hearing on his motion, where defendant was represented by counsel, he further argued that evidence of a second shooter would advance his claim of self-defense.

¶ 14    In response, the State argued that defendant's identity as the shooter was undisputed. Nor would this bullet found inside the Pontiac support his claim for self-defense. That is, even if the testing could somehow demonstrate that someone in the van fired a weapon, it would not have bolstered defendant's claim that the bullets were aimed at *him* and his friends at the party; the bullet was found in the Pontiac in the opposite direction.

¶ 15    The circuit court denied defendant's motion.

¶ 16    We review *de novo* a circuit court's denial of a motion for postconviction testing pursuant to section 116-3 of the Code. *People v. Stoecker*, 2014 IL 115756, ¶ 21. We construe the statute according to its plain and ordinary meaning. *People v. Morrow*, 2022 IL App (1st) 200388, ¶ 50.

¶ 17    Section 116-3 of the Code provides that a defendant may make a motion for fingerprint, Integrated Ballistic Identification System, or forensic DNA testing of evidence from his trial or guilty plea if that evidence was not previously subject to the requested testing. 725 ILCS 5/116-3(a)(1)-(2) (West 2020). The requested testing must employ "a scientific method generally accepted within the relevant scientific community" and have the scientific potential to produce new, noncumulative evidence that is materially relevant to his claim of actual innocence. 725 ILCS 5/116-3(c)(1)-(2) (West 2020).

¶ 18    The defendant first must present a *prima facie* case that "identity was the issue" at his trial or guilty plea and that the evidence to be tested was subject to a sufficient chain of custody. *Id.* § 116-3(b)(1)-(2). That phrase means the perpetrator's identity must have been "disputed or in question" at trial. *People v. Grant*, 2016 IL App (3d) 140211, ¶ 18. A defendant makes a sufficient case by showing he denied committing the crime at trial. *Id.*; see also *People v. Urioste*, 316 Ill. App. 3d 307, 316 (2000). But where a defendant instead admits he committed

the act charged and "contests guilt based upon self-defense, compulsion, entrapment, necessity, or a plea of insanity, identity ceases to be the issue." *Urioste*, 316 Ill. App. 3d at 316 (defendant could not show identity was issue at trial, as he pursued insanity defense at trial).

¶ 19      Here, defendant pursued a theory of self-defense at trial and at no point denied shooting Murphy. In his opening statement, his counsel stated, "[Defendant] accidentally shot his friend Darius." Again in closing: "[Defendant] made a decision *** and it was tragic and he shot and his friend died" and, "He screwed up. He didn't mean to shoot the person who he shot." As such, identity was not an issue at trial, and defendant cannot satisfy this element of a *prima facie* case under section 116-3(b)(1). The circuit court thus correctly denied his motion.

¶ 20      Defendant nevertheless asserts that identity "was a central issue at trial" and that he "contested his guilt at trial through thorough cross-examination of the State's witnesses." He points to conflicting witness testimony about whether anyone in the van had a firearm, and he claims "the identity of the person or persons inside the van and the identity of the person or persons, other than [defendant], who may have been in possession of a gun, and possibly shooting a gun, were critical issues at [defendant's] trial and critical to his claim of self-defense."

¶ 21      That argument misrepresents the record. Defendant's cross-examination of witnesses was directed at developing his theory of self-defense; he never claimed that someone else shot Darius. His present argument that a second shooter may have fired the shot that killed Murphy was first articulated in his section 116-3 motion, never at trial. Because the identity of the shooter was not an issue raised before the jury at trial, defendant failed to present a *prima facie* case for postconviction ballistic testing. See *Grant*, 2016 IL App (3d) 140211, ¶ 18.

¶ 22    That is all we need say to affirm the court's judgment. But in any event, we disagree with defendant's claim that evidence of a bullet fired from the van would support his self-defense theory. That evidence might be helpful if it somehow showed that someone from the van fired a bullet in the direction of defendant or the people at the party. But the bullet at issue was found in the opposite direction, inside the Pontiac where Darius died. So even if this bullet somehow demonstrated that someone fired a gun from the van, it would not show that a bullet was fired in the direction of defendant or his friends.

¶ 23    Defendant further notes that since *Urioste* was decided, the legislature has amended section 116-3(b)(1) to allow a motion for testing after a guilty plea. This expansion of eligibility does not affect defendant's case, where he did not plead guilty but instead proceeded to trial and removed the issue of identity by arguing self-defense.

¶ 24    Finally, we are not persuaded by defendant's argument that the legislature did not intend "to prevent potentially meritorious claims" such as his own. In support, he quotes *Urioste*: "Section 116-3(b)(1) was not enacted for the purpose of limiting the number of issues that potentially innocent defendants could raise and litigate during the trial." *Id.* at 314.

¶ 25    Read in context, the court in *Urioste* was rejecting the State's statutory argument that section 116-3(b)(1)'s use of the phrase "identity was *the* issue" (emphasis added) rather than "identity was *an* issue" simply meant that a defendant who raised multiple issues, *in addition to identity*, was foreclosed from filing a motion for postconviction testing. *Id.* at 312-14. The court in *Urioste* merely rejected the State's narrow reading of the statute. *Id.* at 314. Regardless, that point is irrelevant here, as defendant did not raise *any* issue of identity during his trial.

¶ 26    Because defendant has not presented a *prima facie* case for testing per section 116-3(b)(1), we affirm the circuit court's judgment.

¶ 27    Affirmed.